UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
CASE NO.: 16-CV-00290-PCH

YVONNE BROWN LEWIS,

    Plaintiff,

v.

SCOTT, PARNELL & ASSOCIATES, P.C.,
and ASSET ACCEPTANCE, LLC,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court on the Defendant, Scott, Parnell & Associates, P.C.'s ("Scott Parnell['s]"), Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion") [D.E. 28], filed on October 11, 2016. The Plaintiff, Yvonne Brown Lewis ("Lewis"), filed a Response in Opposition to Scott Parnell's Motion (the "Response") on November 1, 2016 [D.E. 31], and Scott Parnell filed a Reply in Support of its Motion (the "Reply") on November 15, 2016 [D.E. 37]. The Court has reviewed the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons that follow, the Court GRANTS the Motion, and DISMISSES the case without prejudice.

### I. BACKGROUND

On October 8, 2003, Asset Acceptance, LLC ("Asset"), represented by Parnell & Crum, P.A., filed an action against "Yvonne F. Lewis" in the District Court of Houston County, Alabama.[1] (Am. Compl. at ¶ 18). Asset, as assignee and transferee of Chase Manhattan Bank,

---

[1] The parties' filings do not expressly state the relationship, if any, between Scott Parnell and Parnell & Crum. However, Lewis alleges that Scott Parnell is a "debt collector" as defined under 15 U.S.C. § 1692a(6) (Am. Compl. at ¶ 7), and that Asset retained Scott Parnell to collect on its behalf (id. at ¶ 15). Further, Lewis's allegations ascribe actions taken during the course of the Houston County lawsuit to both Asset and Scott Parnell, rather than to

N.A., brought the action to collect upon a Chase MasterCard credit card debt of approximately $5,000 (the "Debt"). (*Id.*; D.E. 23-1 ("Ex. A")). Over an eight month period, the Defendants made multiple unsuccessful attempts to serve Lewis with the lawsuit, notwithstanding that she goes by the name Yvonne Brown Lewis and has never gone by the name Yvonne F. Lewis. (*Id.* at ¶¶ 19–21; D.E. 23-2 ("Ex. B")). In one such attempt in November 2003, the Defendants tried to serve Lewis at a past address of hers on Castle Drive in Dothan, Alabama, which the Defendants claimed to associate with the account underlying the Debt. (*Id.* at ¶¶ 22–23). On the "no service notice" that was prepared at the time, the Houston County Sheriff acknowledged that Lewis had moved and was no longer residing there. (*Id.* at ¶ 24; D.E. 23-3 ("Ex. C")). In July 2004, however, a summons was reissued for service at the Castle Drive address. (*Id.* at ¶ 30). This time, a Return on Service was executed and, because service had seemingly been perfected, when Yvonne F. Lewis failed to respond to the Complaint, the Houston County Court entered a default judgment against her on August 26, 2004 (the "Judgment"). (*Id.* at ¶ 31; D.E. 23-5 ("Ex. E")).

More than a decade later, in June 2015, a writ of garnishment was served on Lewis's employer, Laurel Oaks Behavioral Health Center ("Laurel Oaks"). (Am. Compl. at ¶ 47; D.E. 23-6 ("Ex. F")). Laurel Oaks' payroll company notified Lewis on July 17, 2015, that her wages were being garnished for the repayment of the Debt, which had swelled over time to approximately $13,000. (*Id.* at ¶ 49; Ex. F). On August 3, 2015, Lewis submitted a complaint against Scott Parnell to the Consumer Financial Protection Bureau representing, as she does in the Amended Complaint, that she is not the debtor. (*Id.* at ¶¶ 56–57; D.E. 23-8 ("Ex. H")). Scott Parnell responded to the complaint on August 18, 2015, outlining the events that had led to the

---

Asset and Parnell & Crum (*see, e.g., id.* at ¶¶ 18–19), impliedly alleging that Scott Parnell is responsible for Parnell & Crum's involvement in that lawsuit.

garnishment. (*Id.* at ¶¶ 58–59; D.E. 23-9 ("Ex. I")). Meanwhile, Lewis contacted Chase Cardmember Services, and the Cardmember Services department provided her with letters stating they had conducted a review and determined that she was not responsible for the delinquent accounts underlying the Judgment. (*Id.* at ¶¶ 52–55; D.E. 23-7 ("Ex. G")).

On April 25, 2016, Lewis initiated this action against the Defendants, alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"). In the Amended Complaint that Lewis filed on September 12, 2016, she alleges that the Defendants violated 15 U.S.C. §1692e by using false, deceptive, or misleading representations or means in the collection of the Debt (Counts I and II), and violated 15 U.S.C. § 1692f by using unfair or unconscionable means in attempting to collect on the Debt (Count III). (Am. Compl. at ¶¶ 68, 70, 72). In support of these counts, Lewis claims that the Defendants engaged in deceptive and unconscionable conduct by attempting to serve her at an address she no longer lived at, after receiving notice that she had moved (*id.* at ¶¶ 39, 42); by garnishing her wages in an attempt to collect the Debt pursuant to a Judgment against Yvonne F. Lewis, even though she has never gone by that name (*id.* at ¶¶ 45–47); and by continuing to wrongfully garnish her wages until August 2016, despite being notified of the error (*id.* at ¶¶ 62, 65). Lewis claims that as a result of the Defendants' FDCPA violations, she is entitled to statutory damages pursuant to § 1692k(a)(2)(A), actual damages pursuant to § 1692k(a)(1), and reasonable attorneys' fees and costs pursuant to § 1692k(a)(3). (*Id.* at ¶¶ 68, 70, 72).

Scott Parnell filed the Motion that is now before the Court on October 11, 2016. In the Motion, Scott Parnell argues dismissal is proper because Lewis's allegation that the debt is a "consumer" debt (as it must be to bring a claim under the FDCPA) is an unsupported legal conclusion. (Mot. at 5–6). Scott Parnell also argues dismissal is proper because Lewis's claims

are "inextricably intertwined" with the state court Judgment, which has not been vacated, and are thus barred under the *Rooker-Feldman* doctrine. (Mot. at 6–9).

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This standard requires a plaintiff to provide more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555–56.

When considering a motion to dismiss, the Court must accept all of the plaintiff's factual allegations as true, and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *cf. Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). To avoid dismissal, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

Scott Parnell claims dismissal is warranted for two primary reasons, namely that: (1) Lewis's allegation that the debt is a "consumer" debt is an unsupported legal conclusion, and (2)

4

Lewis's FDCPA claims are essentially a collateral attack on the state court Judgment, and are thus barred under the *Rooker-Feldman* doctrine. The Court addresses these arguments in turn.

### I. Lewis's Allegation That the Debt Is a "Consumer" Debt

To recover under the FDCPA, the allegedly unlawful activity must, as a threshold matter, arise out of a qualifying "debt." *See Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010). The Act defines a "debt," in relevant part, as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Scott Parnell argues that the Amended Complaint must be dismissed because Lewis's allegations fail to establish that the Debt meets this definition. (Mot. at 5–6).

Lewis alleges in the Amended Complaint that the "obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal Chase credit card." (Am. Compl. at ¶ 11). With the Act's definition of "debt" in mind, Scott Parnell argues that this is merely a "threadbare recitation" of a key element in the cause of action, and that it therefore fails to satisfy the pleading standards set forth in *Twombly* and *Iqbal*. (Mot. at 6). However, in addition to establishing that the obligation at issue is a credit card debt, Lewis's allegations establish that the Debt is a relatively small amount (*see* Ex. A), that Scott Parnell is a "debt collector" as defined under § 1692a(6) (*id.* at ¶ 7; Am. Answer at ¶ 7), that the alleged debtor is an individual and not a business (*id.* at ¶¶ 18, 40; Ex. A), and that the address the Defendants associated with the debtor's account was residential (*id.* at ¶¶ 22, 26–27; Exs. A, B).

The Court finds that Lewis's allegations, taken collectively, are sufficient to plausibly infer that the Debt qualifies under § 1692a(5). *See McBeth v. Credit Prot. Ass'n, L.P.*, No. 14-

5

00606, 2015 WL 4429324, at *5 (M.D. Fla. July 20, 2015) (denying summary judgment as to defendant's claim that plaintiff had failed to establish the obligation at issue was a consumer debt under § 1692a(5), reasoning the lack of a business name or identification number associated with the debtor's account, along with the fact that defendant primarily collected consumer debts, was sufficient for the court to infer the debt was incurred for personal purposes). Accepting Lewis's allegations as true, she is not the actual debtor, and as Lewis notes in her Response, the FDCPA was intended, in part, to "eliminate the recurring problem of debt collectors dunning the wrong person." S. Rep. No. 95-382, at 4, *reprinted in* 1977 U.S.C.C.A.N. at 1699. To require greater specificity as to the nature of the Debt at the pleading stage would undermine this purpose, because mistakenly pursued individuals do not usually have access to information relating to the underlying debt.[2]

## II.  The Applicability of the *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, only the Supreme Court of the United States has appellate jurisdiction over state court civil judgments.[3] *See Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 622 (11th Cir. 2015). As the Eleventh Circuit has explained, the doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court [is] 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262–63 (11th Cir. 2012) (quoting *Casale v. Tillman*, 558 F.3d

---

[2] Recognizing this, some courts have reasoned, convincingly, that plaintiffs who were mistakenly pursued do not need to prove the underlying debt meets the definition set forth under §1692a(5). *See, e.g.*, *Davis v. Midland Funding, LLC*, 41 F.Supp.3d 919, 925 (E.D. Cal. 2014) ("It would be absurd to hold that a plaintiff who is subject to debt collection efforts for an obligation that he does not owe is ineligible for the FDCPA's protections simply because he cannot characterize the nature of that obligation.").

[3] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

1258, 1260 (11th Cir. 2009) (per curiam)).  Scott Parnell argues that Lewis's claims amount to the "de facto equivalent" of an appeal that is barred under the doctrine, because the Defendants' allegedly wrongful conduct (*i.e.*, attempting to serve Lewis at the Castle Drive address after they had been made aware that she no longer lived there, and garnishing her wages after the default Judgment was entered) only support a claim if the Judgment, which has not been set aside, was improperly entered by the Houston County Court. (Mot. at 7–8).

In response, Lewis argues that the Amended Complaint includes claims against Scott Parnell for deceptive and unfair collection practices that exist independently of the Judgment, and that the *Rooker-Feldman* doctrine does not apply to these claims. (Resp. at 8–13). Lewis also argues that, to the extent the *Rooker-Feldman* doctrine *does* apply, her claims fall under multiple exceptions—including an exception for judgments that are void *ab initio*, and an exception for cases in which the plaintiff had no reasonable opportunity to raise his or her federal claim in the state proceedings. (Resp. at 10–11). Specifically, Lewis claims that because she was never served in the state court action in which the Judgment was entered in 2004, the court lacked jurisdiction to enter the Judgment, and the Judgment was therefore void *ab initio*. And she claims that because she did not receive notice of the state court action until 2015, she did not have an opportunity to assert her FDCPA claims in the context of that lawsuit. (*Id.*).

The Court finds that the *Rooker-Feldman* doctrine is applicable to this case, and that each of Lewis's claims is "inextricably intertwined" with the state court Judgment. Lewis alleges that the Defendants violated §1692e by using false, deceptive, or misleading representations or means in the collection of the Debt (Counts I and II), and violated 15 U.S.C. § 1692f by using unfair or unconscionable means in attempting to collect on the Debt (Count III). But the only way the factual allegations contained in the Amended Complaint are sufficient to state a claim under

these sections is if, in fact, the Defendants did not actually serve Lewis, and were thus wrong to obtain a default Judgment and subsequently seek to collect from her. Lewis's claims depend upon the invalidity of the Judgment; if the Judgment is *valid*, then Lewis has not alleged anything unfair or improper about the Defendants seeking to collect upon it.

Moreover, while it may be true that in Alabama the failure to effect proper service "deprives the court of jurisdiction and renders a default judgment void," *Image Auto, Inc. v. Mike Kelley Enters., Inc.*, 823 So. 2d 55, 657 (Ala. 2001), the Eleventh Circuit has never recognized an exception to the *Rooker-Feldman* for judgments that are void *ab initio*. *See Tillman*, 558 F.3d at 1261 n.3; *see also Ware v. Polk Cty. Bd. of Cty. Comm'rs*, 394 F. App'x 606, 609 (11th Cir. 2010) ("We have not yet recognized an exception to the *Rooker-Feldman* doctrine in cases where the state court that issued the underlying state court judgment lacked jurisdiction."). Importantly, the decisions Lewis cites in support of her argument that such an exception exists (and is applicable in this case) are in the bankruptcy context, and are thus inapposite. As the Seventh Circuit has explained:

> While a void *ab initio Rooker–Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here. As we have said, the Illinois state courts were competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene. If a state court had violated constitutional jurisdictional limits, [the plaintiff-appellant] could have brought that up with the Supreme Court after exhausting his state court remedies.

*Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003).

Following *Schmitt's* reasoning, courts in the Eleventh Circuit have declined to invoke the void *ab initio* exception outside of the bankruptcy context. *See, e.g., Flatau v. Sherman Fin. Grp., LLC*, No. 14-00245, 2015 WL 8773299, at *4 n.5 (M.D. Ga. Dec. 14, 2015) ("[T]o the Court's knowledge, the exception has only been applied in bankruptcy cases, such as when a

state court acts in violation of the bankruptcy discharge."). And although Lewis also claims she did not have an opportunity to argue her FDCPA claims in the context of the state court suit, these claims, as explained above, are the "de facto equivalent" of an appeal challenging the validity of the Judgment and the corresponding garnishment, and the Court notes that Lewis is, in fact, currently seeking to have the Judgment set aside in state court under Alabama Rules of Civil Procedure 60(b)(4) and (6). (Resp. at 11 n.1); *see also Flatau*, 2005 WL 8773299, at *6 n.8 (rejecting plaintiff trustee's argument that the alleged debtor did not have a reasonable opportunity to raise his claims in state court, characterizing the argument as "a rehash" of the argument that he was not properly served, and noting that he "had a reasonable opportunity to raise the issues regarding the propriety of the [d]efendants' collection efforts and the validity of the default judgment and corresponding garnishment in state court").

## IV.   CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Scott Parnell's Motion to Dismiss is **GRANTED**. Under the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction to consider Lewis's claims against Scott Parnell and Asset.[4] Because the Court lacks jurisdiction, the case is **DISMISSED** without prejudice, and all pending motions, if any, are **DENIED** as moot. The clerk is directed to mark this case **CLOSED**.

---

[4] Asset did not move to dismiss Lewis's Amended Complaint (though counsel did state on the record during a hearing on December 16, 2016, that it believed the Court lacked jurisdiction for the reasons stated in Scott Parnell's Motion). Even so, the Court "is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (explaining a district court has an obligation to "zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises"). The Court finds that under the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over Lewis's claims against Asset, as well.

**DONE AND ORDERED** in Chambers in Miami, Florida, on December 16, 2016.

                                                    Paul C. Huck
                                          United States District Judge

Copies provided to:

All counsel of record